UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PETROBRAS AMERICA INC. AND CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND INSURANCE COMPANIES SUBSCRIBING TO POLICY NO. B0576 / JM 12318, <br><br>   Plaintiffs, <br><br> v. <br><br> VICINAY CADENAS, S.A., <br><br>   Defendant. | §§§§§§§§§§§§§§§§§§ <br><br> C.A. No. 4:12-CV-888 |

AMENDED MOTION FOR LEAVE TO AMEND COMPLAINT BY CERTAIN
UNDERWRITERS AT LLOYD'S LONDON AND INSURANCE COMPANIES
<u>SUBSCRIBING TO POLICY NO. B0576/JM 12318</u>

Certain Underwriters submit this Amended Motion for Leave to Amend Complaint (superseding the previous motion to amend, Doc. 90), along with a new proposed Third Amended Complaint attached as Exhibit A (superseding the previous proposed Third Amended Complaint, Doc. 90-1), which if allowed restates the current causes of action in the Second Amended Complaint (Doc. 89) as claims under Louisiana law because Underwriters believe Louisiana law governs this lawsuit. The new proposed Third Amended Complaint also adds a

1

redhibitory (warranty) claim under Louisiana law[1] and, alternatively, an express warranty claim under maritime law. Nothing in the new proposed Third Amended Complaint changes the operative facts of this case as it merely and principally seeks to apply the correct law to this dispute and conform the claims to the Court's summary judgment order. Thus, Underwriters respectfully request the Court to grant this Amended Motion for Leave and allow filing of the new proposed Third Amended Complaint.

### I.   Summary of Motion

1. Pursuant to the Outer Continental Shelf Lands Act, 43 USC § 1333(a)(1), Louisiana law should apply to this dispute and not maritime law. Underwriters seek leave to re-plead under Louisiana law the causes of action already stated in the Second Amended Complaint (Doc. 89), specifically under the Louisiana Products Liability Act (LPLA) (which subsumes all other causes of action, except redhibition); and

2. Add a claim for redhibition under Louisiana law, and alternatively express warranty under maritime law, pursuant to the Court's recent summary judgment ruling that the Riser System (chain included) is one "product," and that under maritime law only warranty claims apply.

3. Good cause exists for amending the complaint because regardless of timing the proper law should be applied to do justice, Underwriters raised the issue when it came to their

---

[1] The Court, via the summary judgment order (Doc. 83) indicates that the chain, riser, and all other equipment in the Riser System is the one "product" at issue. In accord with that, a redhibition cause of action allows Underwriters to recover for all of the damage done to the Riser System/the one "product."

attention after researching the Court's rulings and after lead plaintiff Petrobras declined to replead the complaint, and the proposed amendments do not add or change any facts, but conform the pleadings to the Court's summary judgment ruling.

## II.   Nature and Stage of Proceeding

Petrobras filed this lawsuit in March 2012, which Underwriters joined, pleading maritime law as the basis for jurisdiction, and the OCSLA as an alternative basis for jurisdiction. The original complaint alleged claims under maritime law for negligence, gross negligence, products liability, and breach of implied warranty. (Doc. 1.) To clarify the tort nature of the allegations, an amended complaint was filed that dropped the implied warranty theory and added a failure to warn claim. (Doc. 26). Summary judgment motions were filed and the Court recently granted Vicinay's motion, holding that the economic loss doctrine precluded tort recovery under maritime law. (Doc. 83). The Court also granted Underwriters' cross-motion for leave to amend the complaint to add a cause of action for fraud, recognizing that in some circumstances fraud is a recognized exception to the economic loss doctrine. (Doc. 83).

On September 10, 2014, Underwriters filed a Second Amended Complaint adding the fraud claim, and Petrobras filed a notice that it was not filing an amended complaint. (Docs. 89, 87). At the same time, Underwriters moved for

3

leave to add a claim for breach of express warranty pursuant to the Court's comments in the summary judgment order. (Doc. 83). Underwriters now amend the motion for leave to amend the complaint to seek leave to restate the existing claims under Louisiana law, specifically under the LPLA and other Louisiana civil code remedies, and to add a claim for redhibition (warranty), and alternatively, an express warranty claim under maritime law. Trial is set for the April/May 2015 term. (Doc. 47).

### III.     Legal Standard

Generally, if the court issues a pretrial order that requires all pleadings to be amended by a certain date, the parties must abide by that order. *See* Fed. R. Civ. P. 16(b)(3)(A). Nevertheless, that schedule may be modified for good cause. *See* Fed. R. Civ. P. 16(b)(4). The grant or denial of an opportunity to amend is within the district court's discretion. *Foman v. Davis,* 371 U.S. 178, 182 (1962). If the movant files the amendment as soon as it realizes the amendment is necessary, the court should permit it. *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 391 (5th Cir. 1985).

If the requirements of Rule 16 are satisfied, the court must determine whether to grant leave under Rule 15. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.,* 315 F.3d 533, 536 (5th Cir. 2003). Rule 15 provides that the court

should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). "Leave to amend should be freely given, and outright refusal without justification . . . is considered an abuse of discretion." *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004).

### IV.   Argument and Authority

The Court should grant Underwriters' Amended Motion for Leave to Amend the Complaint because good cause exists to allow the amendment. When deciding whether good cause exists the court should consider: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Filguiera v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). A consideration of these factors mitigates in favor of allowing the amendment.

#### A.   Explanation for failure to timely move for leave to amend.

##### 1.   Claims under Louisiana law

This action arises from the failure of a defective tether chain manufactured by Vicinay and used by Petrobras as part of a floating production, storage and offloading vessel system built to service Petrobras' oil and gas production operations on the OCS, approximately 180 miles off the coast of Louisiana.

5

Underwriters indemnified Petrobras for a portion of its damages sustained as a result of the failure of Vicinay's defective tether chain, and are subrogated to Petrobras' claims for those damages.

Underwriters joined in Petrobras' complaint which pleaded maritime law as the basis for jurisdiction, and the OCSLA as an alternative basis for jurisdiction. (Doc. 1). Federal question jurisdiction under OCSLA is, by virtue of its express statutory provision, independent of any additional maritime basis for federal jurisdiction. *See* U.S. Const. Art. III, §2; 28 U.S.C. §1333. The OCSLA is a Congressionally-mandated choice of law provision requiring that the substantive law of the adjacent state is to apply. *Texaco Exploration & Prod. Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 772 (5th Cir. 2006). Having undertaken a re-evaluation of the case following the decision of lead plaintiff Petrobras not to amend the complaint, Underwriters believe that OCSLA is the governing law, and applies federal law with the law of the adjacent state of Louisiana as a gap-filler, displacing maritime remedies.

In August 2014, the Court made summary judgment rulings that the economic loss doctrine barred Plaintiffs' tort claims under maritime law. (Doc. 83). The Court allowed the complaint to be amended to add fraud. Lead plaintiff Petrobras, with damages far in excess of those to which Underwriters are

subrogated, informed the Court and all parties that it would not be filing an amended complaint (Doc. 87). As a consequence of Petrobras' departure, Underwriters became the lead and sole plaintiff in this litigation. Therefore, Underwriters began the task of further reviewing the law in light of the Court's analysis that the Riser System (chain included) was one single "product"[2] and that the claims lie more appropriately in warranty, and began drafting an amended complaint. During that process, Underwriters undertook additional research and analysis regarding the applicable law and concluded that OCSLA (and thus Louisiana law) applied because the product at issue under the Court's ruling (the Riser System) was attached to the seabed, leading to this amended motion.

The interplay of the OCSLA, its situs test, and whether maritime law applies of its own force, have long been recognized as an unpredictable and "murky" area of the law, with conflicting and often inconsistent case holdings. *See Barker v. Hercules Offshore, Inc.,* 713 F.3d 208, 214 (5th Cir. 2013) (citing *Smith v. Penrod Drilling Corp.*, 960 F.2d 456, 460 (5th Cir.1992) "our [circuit] case law [applying maritime law] arguably conflicts with OCSLA"). Determining whether the OCSLA or maritime law governs a particular case has been the subject of countless disputes. *See, e.g., West v. Chevron U.S.A., Inc.*, 615 F. Supp. 377, 378 (E.D. La.

---

[2] While respecting the Court's ruling, Underwriters respectfully disagree with the ruling.

7

1985). However, the *AmClyde* case makes clear that when there is overlapping OCSLA and maritime jurisdiction, and the harm arises from operations involving development and production of minerals on the OCS, that OCSLA's text and history require application of OCSLA's mandatory substantive law provisions. Application of Louisiana law is therefore essential to a proper disposition of Underwriters' claims on the merits.

The OCSLA expressly grants subject matter jurisdiction to the federal courts over cases and controversies arising out of or in connection with any operation involving the development of minerals on the OCS. Development is defined as including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered. 43 U.S.C. §1333(l); §1349(b)(1). The OCSLA applies to "all installations and other devices permanently or temporarily attached to the seabed, which are erected thereon for the purpose of developing or producing resources therefrom." *Id.* The Act extends federal law to the Outer Continental Shelf and borrows adjacent state law as a gap-filler. *AmClyde*, 448 F.3d at 772 (citing 43 U.S.C. § 1333). The Fifth Circuit has consistently read OCSLA's jurisdictional grant broadly. *Id.* at 770.

Admiralty jurisdiction should not be extended to controversies arising in areas covered by OCSLA. *Offshore Logistics v. Tallentire,* 477 U.S. 207, 218 (1986). Admiralty jurisdiction is determined by (1) location and (2) connection with maritime activity. *Sisson v. Ruby,* 497 U.S. 358, 363 (1990). Here, the failure of the tether chain occurred on navigable waters, however, there is no connection to maritime activity. A connection is established by determining: (1) whether the type of incident involved has the potential to disrupt maritime commerce and (2) whether the activity shows a substantial relationship to traditional maritime activity. *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). No vessel was involved, maritime transportation was not involved, and the general character of the activity in producing oil and gas is not maritime related. A product defect claim arising out of an installation for production of resources on the OCS is not traditional maritime activity. Any connection to maritime law is "eclipsed by the . . . connection to the development of the Outer Continental Shelf." *AmClyde* at 771.

Three requirements must be met for state law to apply as surrogate federal law under OCSLA: (1) the controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artific[i]al structures permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force; and (3) the

state law must not be inconsistent with federal law. *Union Tex. Petrol. Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990). The first prong is met because the defective tether chain was attached to underwater structures that were affixed to the seabed on the OCS.[3] Harm arising from negligent construction, maintenance or repair of oil and gas facilities on the OCS has repeatedly been held to meet the situs requirement. *See Amclyde, supra* (platform-construction accident in which a crane dropped a piece of the platform from a vessel into the ocean occurred on an OCSLA situs and adjacent state law governed the claims); *Richardson v. Kerr-McGee Oil & Gas Corp.,* No. 08-1074, 2011 WL 2565315 (E.D. La. June 28, 2011) (injury on buoyant petroleum extraction facility attached to seafloor on the OCS required application of OCSLA and adjacent state law).

The second prong is met because at the time of the incident, Petrobras was undeniably involved in operations to develop minerals on the OCS. The defective chain that failed was specifically for use in the production of oil and gas resources. The chain was connected to the seabed via the riser making it a fixed structure akin to a fixed platform. General maritime law does not apply of its own force to structures affixed to the seabed. *Hufnagel v. Omega Service Indus. Inc.*, 182 F.3d

---

[3] *See* Document 55, Declaration of Robert Carter, attached to Underwriter's Opposition to Vicinay's Motion for Summary Judgment. Under the Court's summary judgment order (Doc. 83), the tether chain, riser and subsea equipment affixed to the seabed are all one "product." A necessary conclusion from that ruling is that the chain is attached to the seabed.

340, 351-52 (5th Cir. 1999) ("For this reason, the [Supreme] Court has compared fixed platforms to piers, jetties, bridges, and ramps running into the sea.")

Conversely, in order for maritime law to apply, there must be both a "maritime situs and a connection to a traditional maritime activity." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215 (5th Cir. 2013) (injury occurring while vessel was attached to seabed was governed by OCSLA). In this case, there is no traditional maritime activity that took place and no vessel was involved. Instead, the defective chain was attached to an oil and gas riser that was affixed to the seabed for the purpose of hydrocarbon development and the controversy surrounding the defect would not have arisen but for that development. Maritime law does not apply because the claims are "inextricably linked" to development of the OCS and have no traditional maritime link. *AmClyde, supra* (there is nothing inherently maritime about defective parts of a crane wire on a derrick barge involved in dropping a deck module into the Gulf).

The third prong is met because there is no conflict between any applicable federal law and the Louisiana Products Liability Act or other Louisiana remedies. *See Mixon v Anadarko Corp.*, 2010 WL 1443901 (W.D. La. April 9, 2010) (nothing in the LPLA inherently conflicts with federal law under the OCSLA); *see W&T Offshore, Inc. v. Apache Corp.,* 918 F. Supp. 2d 601 (S.D. Tex. 2013). This analysis

11

shows that OCSLA is the proper jurisdictional basis for this case, and that the law of the adjacent state of Louisiana should apply. Accordingly, Underwriters seek leave to re-plead their existing claims under Louisiana law.[4]

### 2. Contract based claims

In granting summary judgment on the tort claims under maritime law, the Court noted that the proper remedy for the claim of product defect lies in contract or warranty. (Doc. 83, p. 10). The Court granted Underwriters' cross-motion for leave to add a fraud claim, recognizing that in some circumstances fraud is a recognized exception to the economic loss doctrine (Doc. 83). Based on the Court's comments, Underwriters also filed a motion to add an express warranty claim under maritime law. (Doc. 90). As stated in *Foman*, a motion for leave to amend based on a decision to plead in conformity with rulings in the case should be allowed if the denial of the motion would be outcome determinative of the case. Under the current rulings, the sole remaining claim for disposition under maritime law is the fraud cause of action. Denying the motion to add a claim for breach of express warranty is outcome determinative if the Court is correct that recovery lies only in contract or warranty, and if maritime law applies. Because it is outcome determinative, the motion to amend should be granted.

---

[4] Because the OCSLA governs and Louisiana law applies, Underwriters will also file a motion to reconsider the Court's prior summary judgment ruling.

Underwriters believe that OCSLA and Louisiana law govern the merits, and seek leave to plead a claim in redhibition (Louisiana's warranty theory of recovery) and leave to re-plead the existing product liability claim under the LPLA. If Louisiana law applies (and the Court is correct that the chain, riser and related equipment are all one "product"), then redhibition provides recovery for economic loss to the product. *Southwest Louisiana Hosp. Ass'n v. BASF Constr. Chemicals, LLC,* 947 F. Supp. 2d 661, 687 (W.D. La. 2013). Alternatively, (if Underwriters are correct that the chain, as opposed to the Riser System is the "product" at issue), then the LPLA provides recovery for damage caused by the product to other property, and that Act subsumes all tort and contract claims related to the product defect, with the exception of redhibition. La. R.S. 9:2800.52; *See, e.g., Touro Infirmary v. Sizeler Architects*, 2004–2210 (La. App. 4 Cir. 11/21/06), 947 So.2d 740, 744; *Cooper v. Wyeth, Inc.,* No. 09–929–JJB–CN, 2010 WL 2653321 (M.D. La. June 25, 2010).

Leave to amend is proper because the case should be determined under the correct law and on the merits as measured by that law, rather than on pleading technicalities. *Foman, supra.* The alternative express warranty claim under maritime law, the redhibition claim and the LPLA claim are all based on the

same operative facts and representations as the fraud claim, which the Court previously granted leave to file.

### B. Importance of the amendment

The proposed amendments re-pleading the existing claims under Louisiana law, and adding warranty claims, are critical: (1) the proper law (in this case, Louisiana) should always govern the merits of a case, and (2) the Court has ruled that based on the facts of this case and maritime law (should it apply), the proper relief lies in warranty, not tort. The current complaint does not include the redhibition claim under Louisiana law, express warranties (in the alternative) under maritime law (should maritime law apply), nor does it include a product liability cause of action pleaded under the LPLA.

Amendments that do not change the fundamental nature of the lawsuit, but clarify the jurisdictional basis, correctly identify the governing law, and comport with the applicable legal authority are important and should be allowed. *Dozier v. Rowan Drilling Co.,* 397 F. Supp. 2d 837, 855 (S.D. Tex. 2005) (amendment allowed adding OCSLA and Louisiana law as governing law instead of maritime law); *see also Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir. 1981) (citing cases where amendments were permitted that changed the theory of the case to comport with applicable law).

It is undisputed that OCSLA provides a basis for subject matter jurisdiction in this case. It is equally apparent that Louisiana law governs the substantive merits under OCSLA. It would be inequitable and unjust to dismiss Underwriters' claims and deny them recovery based upon application of the wrong law. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

The amendments are not futile because under the Court's ruling that the chain and riser are one "product," redhibition provides recovery for damage to the product itself and resulting economic loss. La. Rev. Stat. Ann. § 9:2800.53 (2009); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 252 (5th Cir. 2002). The LPLA sets forth the exclusive remedy under Louisiana law against manufacturers for damages caused by their products, except for redhibitory defects. La. R.S. 9:2800.52. Damages available under the LPLA include all damage caused by the product and purely economic loss arising from the defect to the extent redhibition does not allow recovery for them. La. R.S. 9:2800.53(5); *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.,* No. 09-0750, 2010 WL 2195685, *2, *4 (W.D. La. May 28, 2010) (citing *Bearly v. Brunswick Mercury Marine Div.,* 888 So.2d 309, 312 (La. App. 2 Cir. 10/27/04) ("[A]ll [commentators] seem to agree

that the consumer will have a right to recover against the manufacturer for purely economic loss, whether under the LPLA or in redhibition.").

Here, Petrobras, and by extension the subrogated Underwriters, suffered direct physical damage to property (whether the riser and chain are considered one product, or the riser is considered "other property") from the defective chain and resulting economic loss, which are recoverable under either redhibition and/or the LPLA.

### C. Potential prejudice in allowing the amendment

In determining whether to allow amendment, the Court should consider undue prejudice to the opposing party. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n.,* 751 F.3d 368, 378 (5th Cir. 2014). Vicinay will experience no prejudice if Underwriters are allowed to re-plead the existing claims under Louisiana law and to add a redhibition claim under Louisiana and, alternatively, a warranty claim under maritime law. The underlying facts which substantiate the added claims are the same as those supporting the current claims, and re-pleading the current claims under Louisiana law does nothing more than conform the current claims to the correct law. The added breach of warranty claim arises from the same conduct, transaction and occurrence set out in the original pleadings, contains no new or additional allegations, and has been the subject of

discovery. Vicinay would not be in the position of having to re-tool its discovery plan in order to reveal or uncover a substantial universe of newly relevant discovery.

Further, not a single deposition has been taken, so that Vicinay has an opportunity to question all witnesses on the elements of the claims pleaded. Also, Underwriters are unaware of any new documents that would have to be produced by re-pleading the current claims under Louisiana law, and adding a breach of warranty claim. The same nucleus of facts drives the liability and damages theories. All that will change is the civil code name given the theory of recovery under Louisiana law.

Under similar circumstances, the United States Supreme Court stated in *Foman* that the amendment should have been allowed to state the accurate law as it "would have done no more than state an alternative theory of recovery." *Foman v. Davis*, 371 U.S. 178, 181-182 (1962). Being able to proceed with this case under the correct law and correct theories of recovery to reach a decision on the merits is paramount to any litigant, especially when the damages caused by Vicinay are as substantial as they are in this matter.

### D. The availability of a continuance to cure prejudice

The current scheduling order sets trial for April/May 2015. Discovery cutoff is February 27, 2015. (Doc. 47). In the Court's latest order, the deadline to disclose expert witnesses was moved to October 15, 2014 with the deadline to provide full expert disclosures on November 14, 2014.[5] (Doc. 78). Because the facts and evidence underlying the previously allowed fraud claim, the proposed warranty claims and all claims re-pleaded under Louisiana law are the same as those underlying the original claims, a continuance should not be needed. However, Underwriters do not object to a continuance should the Court deem one necessary. No prejudicial effect exists that could not be cured with a short continuance.

### V. Conclusion

The Court should grant Underwriters' request to amend their pleadings to re-plead their current claims under Louisiana law and to add a breach of express warranty claim under Louisiana law and, alternatively, maritime law. The factors to be considered in determining good cause for amending a pleading after the deadline weigh heavily in favor of allowing the amendment. Vicinay will suffer no prejudice as the facts and underpinnings of the amended claims are the same as

---

[5] In fact, at the hearing that lead to the Court's order, Underwriters' counsel agreed to move Vicinay's full expert disclosure date to a later date if the Court were so inclined.

the claims previously pled. The damages caused by Vicinay's defective tether chain may rise to over $400 million. Vicinay should not avoid liability based upon the pleadings without consideration of the merits of this case or because the wrong law has been applied. For the reasons stated herein, Underwriters request the Court to GRANT Underwriters Motion for Leave to Amend.

    Respectfully submitted,

    */s/ George H. Lugrin, IV*
    George H. Lugrin, IV
    Attorney-in-Charge
    Texas Bar No. 00787930
    Federal Bar No. 16931
    glugrin@hallmaineslugrin.com
    2800 Post Oak Blvd., 64th Floor
    Houston, Texas 77056
    Telephone: 713.871.9000
    Facsimile: 713.871.8962

OF COUNSEL:
HALL MAINES LUGRIN, P.C.
Karen K. Milhollin
(TX No. 00790180) (Fed. No. 18038)
kmilhollin@hallmaineslugrin.com

**ATTORNEYS FOR PLAINTIFFS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND INSURANCE COMPANIES SUBSCRIBING TO POLICY NO. B0576 / JM 12318, EACH FOR ITSELF AND NO OTHER, SEVERALLY, NOT JOINTLY, BASED ONLY ON ITS OWN RESPECTIVE PERCENTAGE OF INTEREST**

328533.2

## CERTIFICATE OF SERVICE

On October 3, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

| | |
|---|---|
| C. Mark Baker | mbaker@nortonrosefulbright.com |
| Kevin O'Gorman | kogorman@nortonrosefulbright.com |
| Andrea Fair | afair@nortonrosefulbright.com |

**FULBRIGHT & JAWORSKI L.L.P.**
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  713-651-5151
Facsimile:  713-651-5246

Ileana M. Blanco                              ileana.blanco@dlapiper.com
**DLA PIPER LLP**
1000 Louisiana St. Suite 2800
Houston, TX 77002
Telephone: 713-425-8435
Facsimile: 713-300-6035


                                                 */s/ George H. Lugrin, IV*
                                                 George H. Lugrin, IV

328533.2