United States District Court
Southern District of Texas
**ENTERED**
July 24, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PETROBRAS AMERICA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-12-888 |
| | § | |
| VICINAY CADENAS, S.A., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant Vicinay Cadenas, S.A.'s Motion for Summary Judgment on All Claims (Document No. 305). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

## I.  BACKGROUND

*A.    Factual Background*

This is a six-year-old dispute over a broken chain. The case arises from two separate contracts between three different entities. Two of those entities are parties to this lawsuit: Plaintiff Petrobras America, Inc. ("Petrobras") is an oil and gas producer, and Defendant Vicinay Cadenas, S.A. ("Vicinay") is in the business of designing and manufacturing marine chains for use in oil and gas production activities. The first contract (the "EPCI Agreement") is between Petrobras and

non-party Technip USA, Inc. ("Technip"). Under the EPCI Agreement, Petrobras contracted with Technip to construct a free-standing hybrid riser system (the "FSHR System") that would move crude oil from wellheads on the ocean's floor to a floating production storage and offloading facility (the "FPSO Facility") on the ocean's surface. The FPSO Facility services Petrobras's oil and gas production operations in the Gulf of Mexico.

The second contract is between Technip and Vicinay. The contractual relationship between Technip and Vicinay is governed by a purchase order (the "Purchase Order"). Under the terms of the Purchase Order, Vicinay agreed to engineer and manufacture five tether chains (the "Tether Chains") that would connect a portion of the FSHR System to buoyancy cans near the ocean's surface to keep the FSHR System in place. Petrobras is not a signatory to the Purchase Order. There is no contract between Petrobras and Vicinay. The FSHR System, including the Tether Chains, was installed between November 2009 and August 2010. On March 23, 2011, Petrobras discovered a buoyancy can had broken free from its connection to the FSHR System, and a portion of the FSHR System and one of the Tether Chains had fallen to the ocean's floor. Petrobras alleges a link in one of the Tether Chains failed due to unauthorized and defective repair welds Vicinay made during the manufacturing of the Tether Chains, and that, because of

the failure, Petrobras was forced to suspend all oil and gas development in the affected fields.

## B.    *Procedural Background*

Based on Petrobras's allegations, on March 23, 2012, Petrobras commenced the present action in this Court against Vicinay, originally asserting multiple claims under maritime law.[1] On August 11, 2014, the Court granted Vicinay's motion for summary judgment on Petrobras's claims. Petrobras subsequently appealed the Court's August 11, 2014 Order to the United States Court of Appeals for the Fifth Circuit, which reversed the Order and remanded the case with instructions to proceed under Louisiana law. On March 17, 2017, the Court granted Petrobras leave to file a third amended complaint—the live complaint—asserting multiple claims under Louisiana law, some of which the Court has since dismissed. There are two live claims: (1) products liability pursuant to the Louisiana Product Liability Act (the "LPLA"); and (2) redhibition.[2] On December 4, 2017, Vicinay

---

[1] Certain Underwriters at Lloyd's London and Insurance Companies subscribing to Policy No. B0576/JM12318 (the "Underwriters") were originally co-plaintiffs. However, the Underwriters' claims have since been dismissed, and the Underwriters are no longer parties to this lawsuit. *Plaintiffs Underwriters' Notice of Resolution of Claims and Unopposed Motion to Dismiss Underwriters' Claims Against Defendant Vicinay*, Document No. 301.

[2] Under Louisiana law, "redhibition is the remedy when the defect in the thing sold renders it absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased the thing had he known of the vice." *PPG Indus., Inc. v. Indus. Laminates Corp.*, 664 F.2d 1332, 1336 (5th Cir. 1982) (citing La. Civ. Code art. 2520).

3

moved for summary judgment on all of Petrobras's claims, asserting the defense of release. The Court now considers that motion.[3]

## II.  STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

---

[3] Vicinay's interlocutory appeal of the Court's September 6, 2017 Order denying Vicinay's motion to stay pending arbitration (Document No. 285) is currently pending before the Fifth Circuit. Neither party has sought to stay the district court proceedings pending resolution of Vicinay's interlocutory appeal. The Court proceeds to the merits of Vicinay's motion for summary judgment. *See Weingarten Realty Investors v. Miller*, 661 F.3d 904, 909 (5th Cir. 2011).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

## III. LAW & ANALYSIS

The EPCI Agreement contains a release provision (the "Release Provision") and a waiver provision (the "Waiver Provision") (collectively, the "Release and Waiver Provisions"). Vicinay moves for summary judgment on all of Petrobras's claims, asserting the defense of release based on the Release and Waiver Provisions. Specifically, Vicinay contends the Release and Waiver Provisions each independently release Vicinay from liability to Petrobras in this case. Petrobras contends (1) Vicinay waived the release defense; and, alternatively (2) the Release and Waiver Provisions do not release Vicinay from liability. The Court first turns to the threshold waiver issue.

### A. *Waiver of the Release Defense*

Petrobras contends Vicinay waived the release defense by failing to raise the defense in Vicinay's original answer. "Generally, under [Federal Rule of Civil Procedure] 8(c) affirmative defenses must be raised in the first responsive pleading." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009). "However, 'where the matter is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal.'" *Id.* (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983)). Thus, an affirmative defense is not waived if the defendant "raised the

issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Allied Chem.*, 695 F.2d at 856.

The parties do not dispute Vicinay's release defense is an affirmative defense. *See* FED. R. CIV. PRO. 8(c)(1). Nor is it disputed that Vicinay first pleaded release as an affirmative defense in Vicinay's September 20, 2017 answer to Petrobras's third amended complaint.[4] Regarding the timing of Vicinay's pleading, Petrobras contends Vicinay did not raise the release defense at a pragmatically sufficient time because it was raised over five years after Petrobras filed an original complaint. However, despite the stretch of time between Petrobras's filing of an original complaint and Vicinay's pleading of release, Vicinay's release defense was pleaded nearly one year before the trial setting in this case. Further, Vicinay's pending motion for summary judgment on Vicinay's release defense was filed months after Vicinay's pleading of release and months before trial. Petrobras has had ample time to respond to the merits of Vicinay's release defense and has done so by filing a response and surreply to Vicinay's summary judgment motion and a response to Vicinay's objection to Petrobras's surreply.[5] *See Pasco*, 566 F.3d at 578.

---

[4] *See Defendant Vicinay Cadenas, S.A.'s Answer and Defenses to Plaintiffs' Third Amended Complaint*, Document No. 290 at 25.

This case also has a lengthy procedural history, including multiple appeals, one of which resulted in the Fifth Circuit's ordering the Court to apply Louisiana law rather than federal maritime law to this dispute. Indeed, Petrobras filed its third amended complaint after the Fifth Circuit remanded the case and instructed the Court to apply Louisiana law, and Vicinay's pleading of release was made in response to Petrobras's third amended complaint. Petrobras otherwise contends only that it was prejudiced by Vicinay's delay because of the money and time Petrobras spent preparing for trial in this case. The Court, however, finds this contention unpersuasive. *See Allianz Versicherungs, AG v. Profreight Brokers Inc.*, 99 F. App'x 10, 12 (5th Cir. 2004) (declining to find waiver based on a plaintiff's contention that it was "prejudiced by incurring more legal fees than it would have incurred if a defense fatal to its claim had been raised earlier."). In light of these considerations, the Court finds Vicinay's release defense was pleaded in a pragmatically sufficient time and did not prejudice Petrobras. Accordingly, Vicinay's affirmative defense of release has not been waived.

B.     *Merits of the Release Defense*

Having determined Vicinay's affirmative defense of release has not been waived, the Court turns to the defense's merits. Vicinay contends the Release and

---

[5] Defendant Vicinay Cadenas, S.A.'s Objection to Plaintiff's Surreply to Motion for Summary Judgment on All Claims and, in the Alternative, Response to New Arguments and Authorities (Document No. 342) is overruled.

Waiver Provisions each independently release Vicinay from liability to Petrobras. Petrobras contends the Release and Waiver Provisions do not release Vicinay from liability because the Release and Waiver Provisions (1) are unenforceable as a matter of public policy; and (2) do not otherwise apply to Petrobras's claims. The Court addresses each contention in turn.

1. *Enforceability of the Release and Waiver Provisions*

Petrobras contends the Release and Waiver Provisions are unenforceable because they limit Vicinay's liability for reckless conduct. Vicinay contends the Release and Waiver Provisions are enforceable as to Petrobras's claims, regardless of whether the Release and Waiver Provisions are otherwise unenforceable as to reckless conduct.[6] Under Article 2004 of the Louisiana Civil Code, "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." LA. CIV. CODE art. 2004.[7] Article

---

[6] Vicinay also contends the Release and Waiver Provisions are enforceable as to reckless conduct. However, in light of the Court's holding, below, the Court need not address this contention.

[7] Following a previous appeal, the Fifth Circuit clearly instructed the Court to apply Louisiana law to this dispute pursuant to the Outer Continental Shelf Land Act's ("OCSLA") choice-of-law provision. *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 218 (5th Cir. 2016). Vicinay now urges the Court to apply Texas law in disposing of Vicinay's pending motion for summary judgment, contending OCSLA's choice-of-law provision does not apply to Vicinay's affirmative defense of release because, unlike the affirmative claims in this dispute, Vicinay's affirmative defense did not arise on an OCSLA situs. Specifically, Vicinay contends *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) requires the Court to apply a separate "focus-of-the-contract" test to determine whether Vicinay's affirmative defense of release

2004 has been interpreted as voiding any waiver of liability for "willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence." *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 532 (5th Cir. 2001) (citing *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991)). On the other hand, "[g]enerally, courts have upheld limitations of liability between contracting parties when the liability does not arise from intentional misconduct or gross fault." *Hammerman & Gainer, Inc. v. Stratacare, Inc.*, CIVIL ACTION NOS. 09-1786, c/w 09-1852, 2011 WL 13250909, at *4 (W.D. La. Aug. 24, 2011) (Foote, J.) (collecting cases analyzing release provisions in light of Article 2004).

It is undisputed that the Release and Waiver Provisions release Vicinay from liability for reckless conduct.[8] The Release and Waiver Provisions are therefore

---

arose on an OCSLA situs. However, *Grand Isle* was limited to contract disputes and, unlike this case, involved an affirmative contractual cause of action. *Id.* at 787. Indeed, subsequent cases applying the focus-of-the-contract test have all involved affirmative contractual causes of action. *See, e.g., Ace Am. Ins. Co. v. M-I, L.L.C.*, 699 F.3d 826, 829 (5th Cir. 2012); *Tetra Techs., Inc. v. Continental Ins. Co.*, 814 F.3d 733, 739 (5th Cir. 2016). Vicinay does not cite to any authority requiring the Court to apply a separate focus-of-the-contract test to an affirmative defense. Additionally, even if Texas law did separately apply to Vicinay's affirmative defense of release, the parties do not point to any relevant substantive difference between Texas and Louisiana law, and the Court has found none. *See Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014). Therefore, in accordance with the Fifth Circuit's instructions on remand, the Court applies Louisiana law to this dispute, including the Court's disposition of Vicinay's motion for summary judgment.

[8] The Release Provision applies to "willful and wanton conduct or other fault," and the Waiver Provision applies "whether due to neglect or fault . . . ." *Defendant Vicinay*

void to that extent and cannot apply to release Vicinay from liability for reckless conduct. However, Vicinay contends the Release and Waiver Provisions are nevertheless enforceable as to Petrobras's LPLA and redhibition claims—the only live claims in this case—because LPLA and redhibition liability cannot arise from reckless conduct. The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." LA. STAT. § 9:2800.52. "Consequently, a plaintiff 'may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth' in the LPLA." *Rivers v. Remington Arms Co., LLC*, CIVIL ACTION No. 17-17124, 2018 WL 746392, at *2 (E.D. La. Feb. 7, 2018) (Africk, J.) (quoting LA. STAT. § 9:2800.52). Relevant here, "[t]he LPLA does not allow the plaintiff to recover for . . . willful, wanton, and reckless conduct." *Ingram v. Bayer Corp.*, No. 2-352, 2002 WL 1163613, at *2 (E.D. La. May 30, 2002) (Porteus, J.). Indeed, the only claim the LPLA does not subsume is a claim for redhibition and only "to the extent the claimant seeks to recover the value of the product or other economic loss." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002) (citing *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 206 n.5 (5th Cir. 2001)); *Monk v. Scott Truck & Tractor*, 619 So.2d 890. 893 (La. Ct. App. 1993)).

---

*Cadenas, S.A.'s Motion for Summary Judgment on all Claims*, Document 306, Exhibit A, at 25, 27 (*EPCI Agreement*) [hereinafter *EPCI Agreement*].

Thus, although the Release and Waiver Provisions are unenforceable as to claims of recklessness, the LPLA precludes Petrobras from asserting such a claim.[9] Petrobras does not therefore assert any causes of action as to which the Release and Waiver Provisions would be rendered unenforceable. *See Wadick v. Gen. Heating & Air Conditioning, LLC*, 145 So.3d 586, 599 (La. Ct. App. 2014). Accordingly, the Court finds that, as to Petrobras's LPLA and redhibition claims, the Release and Waiver Provisions are enforceable.[10]

2.    *Applicability of the Release and Waiver Provisions*

Thus far, the Court has found Vicinay did not waive the affirmative defense of release, and public policy does not otherwise bar enforcement of the Release and Waiver Provisions as to Petrobras's claims. The Court now turns to the text of the Release and Waiver provisions to determine whether the Release and Waiver provisions apply in this case. Petrobras contends the Release and Waiver Provisions do not apply to Petrobras's lawsuit because (1) Vicinay is not a third-party beneficiary of the Release and Waiver Provisions; and (2) Petrobras's claims

---

[9] Petrobras had previously asserted claims based on Vicinay's allegedly reckless conduct and the Court dismissed them as being subsumed by the LPLA. *See Order*, Document No. 285 at 9. The Court likewise struck Petrobras's request for punitive damages. *See Order*, Document No. 285 at 9 n.12.

[10] The Court notes the result would be the same under Texas law. *See Del Carmen Canas v. Centerpoint Energy Res. Corp.*, 418 S.W.3d 312, 322, 331 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (recognizing that if an exculpatory provision is rendered unenforceable because it applies to "gross-negligence and willful-misconduct claims . . . then Texas courts would hold that, the limitation of liability still may be enforced as to negligence and strict-liability claims.").

do not fall within the scope of the Release and Waiver Provisions. "Under Louisiana law, a contract is the law between the parties, and is read for its plain meaning." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 439 (5th Cir. 2002) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE. art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Clovelly Oil Co. v. Midstates Petroleum Co.*, 112 So.3d 187, 192 (La. 2013).

The Release Provision states, in pertinent part, "[Petrobras] agrees to release . . . **Contractor Group** from and against any and all **Claims, Losses, or Expenses** for . . . **loss or damage to property** of Company Group brought by [Petrobras] **directly or indirectly arising out of this Contract** . . . ."[11] The Waiver Provision states, in pertinent part:

> EACH PARTY HEREBY WAIVES ANY CLAIM FOR ITS OWN CONSEQUENTIAL LOSS . . . AGAINST **THE OTHER PARTY (OR THE OTHER PARTY'S GROUP)** WHICH **ARISES OUT OF OR IN CONNECTION WITH THIS CONTRACT** . . . AND EACH PARTY HEREBY RELEASES EACH OTHER PARTY (AND SUCH OTHER PARTY'S GROUP)

---

[11] *EPCI Agreement*, *supra* note 8, at 25 (emphasis added).

FROM ANY LIABILITY FOR CONSEQUENTIAL LOSS OF THE RELEASING PARTY.[12]

The Court first turns to whether Vicinay is a third-party beneficiary of the Release and Waiver Provisions.

### a.   Third-Party Beneficiary

Vicinay is not a signatory to the EPCI Agreement. Vicinay contends it is a third-party beneficiary of the Release and Waiver Provisions because Vicinay was a member of the "Contractor Group" as that term is used in the Release Provision and referred to in the Waiver Provision.[13] Petrobras does not dispute members of the Contractor Group are third-party beneficiaries of, and can therefore enforce, the Release and Waiver Provisions; however, Petrobras contends Vicinay was not a member of the Contractor Group.

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third-party beneficiary." LA. CIV. CODE art. 1978. "[T]here is no requirement that the third-party beneficiary even be specifically named in the contract." *King v. Employers Nat. Ins. Co.*, 928 F.2d 1438, 1442 (5th Cir. 1991) (citing *Andrepont v. Acadia Drilling Co.*, 231 S.2d 346, 352–53 (La. 1969)).

---

[12] *EPCI Agreement, supra* note 8, at 27 (emphasis added).

[13] Only the Release Provision specifically names the Contractor Group. The Waiver Provision instead references the "other party (or the other party's group)." *EPCI Agreement, supra* note 8, at 27. However, the parties do not dispute, and the Court agrees, that in the context of the pending dispute, the Waiver Provision's reference to the "other party's group" is synonymous with the Release Provision's reference to the Contractor Group.

However, an agreement containing a stipulation of a third-party beneficiary—a so-called "stipulation *pour autrui*"—must "manifest a clear intention to benefit the third party . . . ." *Joseph v. Hospital Serv. Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1212 (La. 2006). "The specific language of the contract in question determines whether a stipulation *pour autrui* has been created." *Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc.*, 380 F. Supp. 2d 755, 767 (W.D. La. 2004) (Methvin, Mag.).

The EPCI Agreement defines Contractor Group to include the "Contractor . . . and its . . . subcontractors of any tier."[14] "Contractor" is defined to include only Technip.[15] "Subcontractor" is defined to include "any . . . entity who has a direct or indirect contract with [Technip] to perform any of the Work . . . ."[16] Vicinay contends it meets the contractual definition of Subcontractor, and was therefore a member of the Contractor Group, because Vicinay contracted directly with Technip (through the Purchase Order) to manufacture and supply the Tether

---

[14] *EPCI Agreement*, *supra* note 8, at 11.

[15] *EPCI Agreement*, *supra* note 8, at 11.

[16] *EPCI Agreement*, *supra* note 8, at 12. The EPCI Agreement's definition of Subcontractor also includes "any . . . entity who has a direct or indirect contract with [Technip] . . . to perform any services for [Technip] during the performance of the Work . . . ." *EPCI Agreement*, *supra* note 8, at 12. Vicinay also contends it was a Subcontractor because it had a direct contract with Technip to perform services for Technip. However, in light of the Court's holding, below, the Court need not address this contention.

Chains for the FSHR System.[17] Petrobras does not dispute Vicinay contracted directly with Technip to manufacture and supply the Tether Chains but contends Vicinay is not a Subcontractor because Vicinay's manufacturing and supplying of the Tether Chains does not qualify as "Work" as that term is defined in the EPCI Agreement. Consequently, the Court must determine whether Vicinay's manufacturing and supplying of the Tether Chains for the FSHR System (as called for by the Purchase Order) qualifies as Work (as contemplated by the EPCI Agreement) so as to qualify Vicinay as Technip's Subcontractor and a member of the Contractor Group.

The EPCI Agreement defines Work by cross-referencing multiple different sections of the EPCI Agreement. Article 1.5.24 defines Work broadly as including "all activities to be performed by [Technip] under the [EPCI Agreement] . . . ."[18] Article 1.5.24 cross-references Article 1.1, which specifies that Work includes the "furnish[ing] [of] all designs, engineering, drawings, supervision, labor, materials, tools, equipment, utilities, facilities, supplies, fuel, incidentals, vessels, barges, transportation, installation, pre-commissioning activities, and other services

_____

[17] Vicinay also contends it was a member of the Contractor Group because it was Technip's contractor. However, in light of the Court's holding, below, the Court need not address this contention.

[18] *EPCI Agreement, supra* note 8, at 12.

necessary to perform . . . ."[19] Article 1.1 cross-references Appendix C of the EPCI Agreement, which likewise defines work as including "[a]ll work (engineering, procurement, fabrication, installation, and testing) to be performed by Technip, and all materials and equipment produced thereof . . . in respect of the [EPCI Agreement]."[20]

Pursuant to the EPCI Agreement, Technip was to engineer, procure, construct, and install the FSHR System.[21] Part of Technip's contractual obligations in engineering, procuring, constructing, and installing the FSHR System included manufacturing and supplying the Tether Chains that were to make up part of the FSHR System.[22] Thus, based on the plain language of Article 1.5.24, the engineering, procurement, construction, and installation of the FSHR System, part of which included the manufacturing and supplying of the Tether Chains, were activities to be performed by Technip under the EPCI Agreement. The manufacturing and supplying of the Tether Chains therefore qualify as Work.

---

[19] *EPCI Agreement, supra* note 8, at 8.

[20] *Defendant Vicinay Cadenas, S.A.'s Motion for Summary Judgment on All Claims*, Document No. 306, Exhibit 3 at 6 (*Appendix C*).

[21] *Third Amended Complaint*, Document No. 233 at ¶ 9 ("Petrobras contracted with [Technip] to engineer, procure, construct, and install the FSHR's, including the tether chains.").

[22] *Third Amended Complaint*, Document No. 233 at ¶ 9.

Petrobras and Technip's intention to include the manufacturing and supplying of the Tether Chains within the scope of Work is confirmed by Article 1.1, which specifies that Work includes the furnishing of a broad range of products and services, including the materials necessary to perform under the EPCI Agreement. It is undisputed that the Tether Chains were materials necessary to Technip's performance under the EPCI Agreement. Appendix C also confirms the Court's interpretation by expressly stating that Work includes the fabrication to be performed by Technip, and all materials and equipment produced thereof. Thus, because Vicinay contracted directly with Technip to manufacture and supply the Tether Chains, and therefore perform Work, Vicinay qualifies as Technip's Subcontractor.[23] Accordingly, as Technip's Subcontractor, Vicinay qualifies as a

---

[23] Petrobras contends for the first time in Petrobras's surreply that Article 8.1 of the EPCI Agreement is determinative of whether Vicinay was a Subcontractor and thus part of the Contractor Group. Article 8.1 provides a notice procedure for Technip's awarding of contracts to "Subcontractors who are to furnish labor, materials, or equipment for each of the principal portions of the Work in excess in the aggregate of [$2 million]." *EPCI Agreement*, *supra* note 8, at 24. Petrobras does cite to, and the Court has not found, any language in the EPCI Agreement indicating Article 8.1 was intended to alter, limit, or place a condition on Article 1.5.22's definition of Subcontractor, and the Court finds it was not. Moreover, Petrobras does not contend Vicinay was not ultimately approved, and the uncontroverted evidence establishes that Vicinay was approved as a Subcontractor. *See Defendant Vicinay Cadenas, S.A.'s Motion for Summary Judgment on all Claims*, Document 306, Exhibit B, at ¶¶ 38, 50, 51, 127–30 (*Declaration of Robert Carter*); *see also Plaintiff Petrobras America Inc.'s Response in Opposition to Defendant Vicinay Cadenas, S.A.'s Motion for Summary Judgment*, Document No. 313, Exhibit A, Document No. 314, at 2–5; *Third Amended Complaint*, Document 233 at ¶ 11.

member of the Contractor Group and a third-party beneficiary of the Release and Waiver Provisions.[24]

### b.   Scope of the Release and Waiver Provisions

Having found Vicinay is a third-party beneficiary of the Release and Waiver Provisions, the Court turns to whether Petrobras's claims otherwise fall within the scope of the Release and Waiver Provisions. Petrobras contends its claims do not fall within the scope of the Release Provision because Petrobras is not claiming "loss or damage" to Petrobras's property.[25] Petrobras also contends its claims do not fall within the scope of the Release and Waiver Provisions because Petrobras's claims do not arise "out of" or "in connection with" the EPCI Agreement. The Court addresses each contention in turn, beginning with Petrobras's contention unique to the Release Provision.

### i.   Claims, Losses, or Expenses for Loss or Damage to Property

Petrobras contends its claims do not fall within the scope of the Release Provision because its claims are not for loss or damage to Petrobras's property.

---

[24] The Court notes the result would be the same under Texas law. *See Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 729–30 (Tex. App—Dallas 1992, writ denied); *see also Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14–09–00748–CV, 2010 WL 2361432, at *4 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

[25] Petrobras does not raise this contention with regards to the Waiver Provision, and it is undisputed that Petrobras's claims fall within the scope of "consequential damages," as that term is used in the Waiver Provision and defined in the EPCI Agreement.

Vicinay does not dispute that Petrobras is not seeking to recover directly for the physical loss or damage to Petrobras's property; however, Vicinay contends Petrobras's claims fall within the scope of the Release Provision because Petrobras's claims result from loss or damage to Petrobras's property. For the Release Provision to apply to Petrobras's lawsuit, Petrobras's claims must be "Claims, Losses, or Expenses for . . . loss or damage to property . . . ."[26] The Release Provision defines the term "Claims, Losses, or Expenses" as "including, without limitation, all costs, demands, damages, suits, judgment, fines, penalties, liabilities, debts, and attorneys' fees."[27]

Petrobras interprets the phrase "any and all Claims, Losses, or Expenses for . . . loss or damage to property" narrowly, contending the phrase includes only claims seeking direct recovery for the physical loss of or damage to property. Petrobras contends the phrase excludes claims seeking to recover, not for the actual loss of or damage to property, but for costs resulting from such loss or damage. Yet the term Claims, Losses, and Expenses is broadly defined and encompasses more than claims seeking only to recover for the direct cost of property loss or damage. For example, Claims, Losses, and Expenses also include fines, penalties, and

---

[26] The Release Provision also applies to "Claims, Losses, or Expenses for personal injury, illness, or death." However, it is undisputed that Petrobras's suit is not a Claim, Loss, or Expense for personal injury, illness, or death.

[27] *EPCI Agreement, supra* note 8, at 24.

liabilities for property damage or loss. These are all potentially indirect costs resulting from property damage or loss. Based on the plain language of the Release Provision; Claims, Losses, and Expenses include "*all* costs" resulting from property damage or loss.

Underlying Petrobras's lawsuit is the physical loss of the FSHR System. Petrobras's lawsuit seeks to recover for the following economic losses resulting from the loss of the FSHR System: (1) the loss of the use of the FPSO Facility and two shuttle tankers; and (2) lost profits on the oil and gas production that was allegedly precluded by the loss of the FSHR System.[28] The Court finds these losses qualify as costs resulting from damage to the FSHR System. Accordingly, Petrobras's claims qualify as Claims, Losses, or Expenses for loss of or damage to Petrobras's property.

        *ii.*    *Arising out of or in Connection with the EPCI Agreement*

Having found Petrobras's claims qualify as Claims, Losses, or Expenses for loss or damage to Petrobras's property—as contemplated by the Release Provision—the Court turns to Petrobras's remaining contention common to the Release and Waiver Provisions. Petrobras contends its claims do not fall within the

---

[28] Petrobras's third amended complaint pleads additional categories of damages that seek direct recovery for actual property damage. *See Third Amended Complaint*, Document No. 233 at ¶ 91. However, Petrobras represents that such damages are no longer sought in this lawsuit. *Plaintiff Petrobras America Inc.'s Response in Opposition to Defendant Vicinay Cadenas, S.A.'s Motion for Summary Judgment*, Document 313 at 14 n.14.

scope of the Release and Waiver Provisions because Petrobras's claims do not arise out of or in connection with the EPCI Agreement. In addition to being a Claim, Loss, or Expense for loss or damage to Petrobras's property, to fall within the scope of the Release Provision, Petrobras's claims must "directly or indirectly aris[e] out of [the EPCI Agreement]."[29] The Waiver Provision likewise applies only to claims "aris[ing] out of or in connection with [the EPCI Agreement]."[30]

Louisiana courts have interpreted "arising out of" language in contracts broadly, applying a connexity test and asking whether the particular injury would have occurred but for the performance of work under the contract. *See Perkins v. Rubicon, Inc*, 563 So.2d 258, 260 (La. 1990). Louisiana courts also "lend[] a broader construction to such phrases as 'in connection with,'" interpreting the phrase as meaning "being related to or associated with . . . ." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1221 (5th Cir. 1986) (citing *Poole v. Ocean Drilling & Expl. Co.*, 439 So.2d 510, 412 (La. Ct. App. 1983)).

Petrobras contends its claims do not arise out of or in connection with the EPCI Agreement because Petrobras does not rely on any term of the EPCI Agreement in support of its claims. Yet, as discussed, *supra* Part III.B.2.a., there is no dispute that Technip entered into the EPCI Agreement with Petrobras to

---

[29] *EPCI Agreement*, *supra* note 8, at 25.

[30] *EPCI Agreement*, *supra* note 8, at 27.

engineer, procure, construct, and install the FSHR System, including the Tether Chains.[31] Nor is it disputed that Petrobras's lawsuit arises from the alleged failure of one of the Tether Chains.[32] Thus, but for the performance of work under the EPCI Agreement (namely, the engineering, procurement, construction, and installation of the FSHR System, including the Tether Chains) Petrobras would not have suffered the alleged injury it complains of (namely, injuries resulting from the alleged failure of one of the Tether Chains). The Court therefore finds Petrobras's claims arise out of the EPCI Agreement. Additionally, for the same reasons, the Court finds Petrobras's lawsuit is related to or associated with the EPCI Agreement and thus arises in connection with the EPCI Agreement.[33] Accordingly, Petrobras's claims fall within the scope of the Release and Waiver Provisions.[34]

---

[31] *Third Amended Complaint*, Document No. 233 at ¶ 9.

[32] *Third Amended Complaint*, Document No. 233 at ¶ 6.

[33] In arguing otherwise, Petrobras relies on a footnote in a previous order in which the Court stated that Petrobras does not rely on any specific provision of the EPCI Agreement in bringing Petrobras's claims. *Order*, Document No. 285 at 10 n.13. However, Petrobras incorrectly conflates the Court's finding that Petrobras is not relying on specific provisions of the EPCI Agreement with the separate determination of whether this case arises out of or in connection with the EPCI Agreement. The latter inquiry is broader. As discussed above, despite not relying on the specific terms of the EPCI Agreement in bringing its lawsuit, Petrobras's claims nevertheless arise out of or in connection with the EPCI Agreement.

[34] The Court notes the result would be the same under Texas law. *See In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 268–69 (Tex. 2008).

C.    *Summary*

To summarize, the Court finds as follows: (1) Vicinay's affirmative defense of release has not been waived; (2) the Release and Waiver Provisions are enforceable as to Petrobras's claims; (3) Vicinay is a third-party beneficiary of the Release and Waiver Provisions; and (4) Petrobras's claims fall within the scope of the Release and Waiver Provisions. The Release and Waiver Provisions therefore apply to Petrobras's claims and each independently releases Vicinay from liability to Petrobras in this case. Accordingly, Vicinay's motion for summary judgment is granted.

<u>IV.  CONCLUSION</u>

Based on the foregoing, the Court hereby

**ORDERS** that Defendant Vicinay Cadenas, S.A.'s Motion for Summary Judgment on All Claims (Document No. 305) is **GRANTED**.[35]

---

[35] Also pending before the court are Plaintiff Petrobras America Inc.'s Motion to Deem Matters Admitted (Document No. 296), Defendant Vicinay Cadenas, S.A.'s Motion for Summary Judgment on All Time-Barred Claims (Document No. 311), Petrobras America Inc.'s Motion to Exclude the Proposed Expert Testimony of George Rodenbusch (Document No. 323), Petrobras America Inc.'s Motion to Exclude the Proposed Expert Testimony of Peter Velez (Document No. 324), Petrobras America Inc.'s Motion to Exclude the Proposed Expert Testimony of Professor Andrew Potts, Dr. Hayden Marcollo, and Dr. Robert Galiguiri (Document No. 325), Petrobras America Inc.'s Motion to Exclude the Expert Testimony of Bradford Bright (Document No. 326), Plaintiff Petrobras America Inc.'s Motion for Summary Judgment on Defendant Vicinay Cadenas, S.A.'s Affirmative Defense of Prescription (Document No. 331), Petrobras America Inc.'s Motion to Exclude the Proposed Expert Testimony of Captain Patrick L. Johnsen (Document No. 333), Defendant's Motion to Exclude Testimony and Report of David St. Amand and Memorandum in Support (Document No. 335), Defendant Vicinay

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, on this **24** day of July, 2018.

DAVID HITTNER
United States District Judge

---

Cadenas, S.A.'s Motion to Partially Exclude Testimony of Dr. Simon Bellemare and Dr. Thomas Eagar (Document No. 343), and Defendant Vicinay Cadenas S.A.'s Motion for Judgment on the Pleadings or, in the Alternative, Motion to Stay Pending Arbitration Under the Louisiana Binding Arbitration Law and the FAA (Document No. 377) (collectively, the "Pending Motions"). In light of the Court's holding, the Pending Motions are denied as moot.